FOURTH DISTRICT—NOVEMBER, 1910.   549

Tennicot v. Donk Bros. Coal & Coke Co., 158 Ill. App. 549.

### John Tennicot, Appellee, v. Donk Bros. Coal & Coke Company, Appellant.

1. VERDICTS—*when not disturbed as against the evidence.* If the evidence upon which a verdict is based is conflicting and irreconcilable it will not be set aside as against the evidence unless clearly and manifestly so.

2. MINES AND MINERS—*notice to operator of dangerous condition.* An operator is chargeable with the nature and character of repairs made by its timbermen and in this way notice of the existence of a dangerous condition may be established.

3. MINES AND MINERS—*what tends to establish dangerous condition.* A dangerous condition is shown if curves exist in the driveway of a mine around which mules in use in such mine could not be continuously so driven as to avoid coming in contact with the timbers or props upon the side of the mine, with the result that such timbers or props not only might be but actually were knocked down.

4. MINES AND MINERS—*when instruction as to marking dangerous places erroneous.* An instruction upon this subject is erroneous which imposes the obligation upon the operator "to see that all dangerous places at the mine, above and below, were *promptly* marked." In this case, however, a corrected transcript showed that the word "promptly" was not in the instruction as read to the jury, and it was held by the court that the word "properly" being the word qualifying "marked," no error had been committed.

Action in case for personal injuries. Appeal from the City Court of East St. Louis; the Hon. W. J. MOYERS, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed April 9, 1910. Rehearing denied October 25, 1910.

WISE, KEEFE & WHEELER, for appellant; MASTIN & SHERLOCK, of counsel.

WEBB & WEBB, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

John Tennicot, appellee, obtained a judgment in the City Court of East St. Louis in the sum of $500 and costs against Donk Bros. Coal & Coke Company, from which judgment said company has prosecuted this appeal. The declaration is in case charging a willful

550    APPELLATE COURTS OF ILLINOIS.

Tennicot v. Donk Bros. Coal & Coke Co., 158 Ill. App. 549.

violation of section 18 of the Mines and Miners Act, and consequent injury of the plaintiff who was employed in said company's mine as driver. The cause was submitted to the jury on the first and second counts of the amended declaration, the sum total of both charges being in substance, that by reason of a very sharp curve in the track at the south end of the east branch of what is known as the parting on the main south entry, and the maintaining by the defendant there of a number of props in dangerous proximity to the rails at said curve, and which props were placed there for the support of cross bars resting against the roof and to secure the same, the miners' cars in passing on said curve there frequently collided with, and frequently jumped the track there by reason of said sharp curve, and collided with, and knocked down said props, thereby endangering the drivers in said mine including this plaintiff, by reason of the falling of said cross-bars and the roof there, and all of which the defendant then and there well knew; that the defendant willfully failed to see that said dangerous place was properly marked and danger signals displayed thereat; that the defendant's mine examiner examined this mine on the morning of the day aforesaid and saw, or would have seen by a good faith examination, said unsafe conditions, and well knew that the same was dangerous for drivers, and willfully failed and omitted to place a conspicuous mark thereat as notice to keep out; and willfully failed to make a report on this condition as he found it in a book kept for that purpose; and that plaintiff was willfully permitted by defendant to enter said mine and entry at said point for work, and not under the direction of the mine manager; and while driving a car along said entry at said point, said car collided with, and left the track and collided with said props, so supporting said roof, and that they were thereby then and there knocked down and plaintiff was injured by the props, cross bars and parts of the roof falling on his head, arms and legs,

whereby he was permanently injured, and expended and became responsible for $250 for medical aid, etc.

Appellant's mine is located and operated by it at Maryville, Madison county. Twelve or more entries were developed westwardly off said main south entry, numbered from 1 to 12 consecutively. Near the point where the eighth entry turns westwardly off the main south, the latter entry branches into two parts, the said two parts coming together with sharp curves near the mouth of the tenth west entry. Each of said branches contained a track over which cars were hauled. The east branch was used to store empty cars for miners engaged in the south side of the mine, and the west branch was used for storing loaded cars collected by the drivers in the south side, and from thence were pulled by the motor to the bottom of the shaft to be hoisted. These two branches were known as the "parting," and were separated by a pillow of coal, having an opening near the mouth of the ninth west entry of sufficient size to permit a driver and mule to pass from one side to the other. The loaded cars were delivered by the driver on the west branch as they came northwards on the main south. They would then unhitch, pass through this cross cut in the pillow eastward on to the track for empties, and then would hitch to and deliver the empties to the miners as they returned by the main south. When they were delivering empties the drivers spoke of it as "going in," and when they returned with their loads, as "going out." At the south end of the parting where these branches come together the entry is about thirty feet wide and curves sharply to the southeast, making, as is said, a sharp corner at the left hand rib. To support the roof at this point cross bars were put up against the roof supported on the west ends by a long bar erected near the roof running from a few feet north of the switch-frog and a little west of south. This long bar was supported on the south end by the right rib, and on the north end by a "dollar leg" standing a little north of

552     APPELLATE COURTS OF ILLINOIS.

Tennicot v. Donk Bros. Coal & Coke Co., 158 Ill. App. 549.

the frog and between the two tracks. Upon this collar bar were resting several cross bars, roof supporters, extending thence southeasterly, and said cross-bars were supported at their east ends by props located between the left rib and the left rail, some of them being near the curve in the left track, and near the corner of the rib. These conditions had existed for months prior to this accident to appellee.

Peremptory instructions at the close of all the evidence were denied to appellant, and its motion for a new trial was overruled by the court. Appellant argues here (1) that the court erred in not granting a new trial; (2 and 3) that there was no willful violation of the Statute proven in this case; (4) that the court erred in its rulings on the evidence; (5) that the court erred in its rulings on the instructions.

First. The claim upon which appellant bases its right to a new trial in this case is that the plaintiff failed to prove his case by the preponderance of the evidence. We have examined the evidence carefully and find that it is very conflicting on almost all the essential points. The plaintiff's evidence regarding the manner in which he got hurt is in substance, that he was driving a mule hitched to an empty car and standing near the center of the back end of the car, and that as he approached this curve in question-while going southward, a bolt on the front end of his car came in contact with a prop on the left side of the track; that this caused his car to run off the track and caused a lot of timber to fall on him; and that at that time he was near the center of the curve and his mule was walking between the rails; that when his car struck the prop it knocked it down, and that about four timbers fell down on him knocking him from his car and injured him about the head, back and abdomen. Appellee also stated that the leg standing between the two tracks near the frog was about twelve inches from the west rail, and that some of the props on the east side stood about twelve or fourteen inches from the

rail while some of them stood not over ten inches therefrom; that some of the cars in passing those props had rubbed them, and that there were marks on two of these props showing that they had been previously rubbed; that during the number of times that he had passed that curve the bolts on the cars struck that prop several times, but that this is the only time he had ever knocked one down. Thomas Page testified that the collar bar leg was between the tracks and not very far from the frog of the switch; that the props on the east side of the track were pretty close, but that he didn't take particular notice of any props that were rubbed. Ben Cannon testified that these props were close to the rail and to his knowledge they had been knocked down four or five times before this accident. John Vasona, the defendant's timberman, testified that he and his uncle put back two of these props and the collar bar leg shortly after plaintiff was injured and that two of the props were scratched by the cars passing there and that they were too close; that previous to that while working there he saw a car scratch a prop and that he had seen two or three cars do that; that a prop on the left side had been knocked down twice before that and that he put them up before plaintiff was injured; that the collar bar leg was knocked down by most every driver before that, and that he put it up about fifty times. He also states that at the time plaintiff got hurt he moved two of these props five inches further away from the track, and that they were the ones the cars rubbed. Against this evidence Williams, mine manager, and Pettigrew, his assistant, say they measured these props (after they were reset) and that the closest prop to the rail was twenty-seven inches away and the farthest, thirty-two inches, and that no props were rubbed. They also say the collar leg down and two props over on the other side were inclined at top towards the rib, and two other witnesses testified to having passed between these props and standing cars there. It is also insisted by

554　　Appellate Courts of Illinois.

Tennicot v. Donk Bros. Coal & Coke Co., 158 Ill. App. 549.

appellant that the witness, Vasona, was impeached by Pettigrew, Copstick and Bayer, the latter two being the mine examiner and clerk of appellant, who all testified that before Vasona testified he told the attorney for appellant that the only prop he set after appellee was hurt was the collar bar leg and that it was the only one down. On this impeachment we might say that it is testified to, even by appellant's witnesses, that this collar bar leg was down and that two other props on east side were inclined or bent over towards the rib, and that he was ordered there by the mine manager to put up these timbers. The jury were certainly warranted in believing that he did put up the three props whatever he may have said about it afterwards. The point on which he was contradicted and the facts are such as to leave quite an impression that they may have misunderstood this witness, or he, them. He certainly would not intend to say in presence of the mine manager that he only put up one prop when he knew that the mine manager must necessarily know that he was ordered to and did put them all back. While not knocked down flat, they were down, that is not up and in place, and admittedly so. We would certainly not be warranted under this evidence in holding that the verdict is manifestly and clearly against the weight of the evidence. It is for the jury to settle questions of fact under such contradictory and irreconcilable evidence as the foregoing. We cannot legally set such a verdict aside. If the facts proved by the plaintiff are to be taken as true, and they are so found evidently by the jury, the plaintiff has proved the charge in his declaration. We will further say that while the cars are proved to extend over the rails only about nine inches and that the bolts could not have extended more than another inch and three quarters further over the rail, that much must also depend upon the distance of the front wheels from the front end of the car. Any car, street car or mining car, when rounding a sharp curve while moving may protrude its

end much farther over the rail than its sides, and the distance the end will extend over the rail depends necessarily on how the car is geared, and the evidence in this record does not show how it was geared.

Second and Third. Appellant also insists that it has proved by the licensed mine examiner that a reasonably careful and prudent examination of this mine was made by him on the morning of the accident; and that he did not find any dangerous condition, and that it is not responsible under the Statute for any dangerous condition that came about that day after such examination, although such condition caused injury. Plaintiff however insists that there was, and had been, for some considerable time prior to this injury, a dangerous condition there; that such an examination would necessarily have revealed this danger, and that the defendant had actual notice of it long before the injury. It is admitted that the place was not marked dangerous by any signal required by the Statute, and that no such condition was reported by the examiner and that the plaintiff was permitted to work there and not under the direction of the mine manager. If the evidence of Vasona, the company's timberman is to be taken as true, the company had actual notice of the danger long prior to the accident. It is chargeable with the nature and character of its repairs made by its timberman. His knowledge was its knowledge. But irrespective of the question of whether the props were twelve inches or thirty-two inches from the switch rails, we are impressed with the notion that there is a dangerous condition there. Mules cannot be driven by any driver with mathematical precision at all times through such curves as are shown to be there, without danger of knocking down those timbers. The evidence shows they were knocked down previously by the tail chain striking one of these props. This shows them to be dangerous, and they ought to be more firmly planted and better guarded. Under the holding of our Supreme Court in Olson v. Kelley Coal Co., 236 Ill.

502, the appellant is clearly liable in this case, as "The question of the condition of the entry at the point where the accident occurred was one of fact to be determined by the jury, and not by the mine examiner."

Fourth. We have examined carefully the rulings of the court on the evidence that is complained of by appellant and find that in every instance appellant had the benefit of the evidence objected to elsewhere wherein there was any question as to the correctness of the particular rulings pointed out.

Fifth. There was one erroneous instruction given, appellee's second instruction, had it been worded as originally copied into the record by the clerk. As first certified the expression "to see that all dangerous places at the mine, above and below, were promptly marked," rendered this instruction very erroneous. The corrected transcript of this instruction shows that the word "promptly," was not in the instruction as read to the jury, and should have read "properly marked," etc. All the other instructions of appellee that are objected to were unobjectionable, and what we have already said answers the objections raised. For the reasons already given, it was not error for the court to deny appellant's peremptory instruction at the close of all the evidence.

Finding no reversible error in this record the judgment of the lower court is affirmed.

*Affirmed.*